Orly Taitz, Esq
Attorney & Counselor at Law
**29839 S. Margarita Pkwy**
**Rancho Santa Margarita CA 92688**
ph. 949-683-5411
fax 949-766-7603
California Bar ID No. 223433
( Application for Admission ***Pro Hac Vice***
U.S.D.C. Middle District of Georgia filed)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMUS DIVISION
**120 12th Street    P.O. Box 124    Columbus, Georgia 31902**

| | | |
|---|---|---|
| CAPTAIN CONNIE RHODES, M.D. F.S.,§ | | |
| Plaintiff, § | Civil Action No:_____ | |
| § | | |
| v. § | | |
| § | | |
| COLONEL THOMAS D. MACDONALD, § | **Rule 23, Class Action Alleged** | |
| GARRISON COMMANDER, FORT § | and Certification Requested | |
| BENNING, GEORGIA, § | | |
| GEORGE STEUBER, DEPUTY § | | |
| COMMANDER, FORT BENNING, § | | |
| DR. ROBERT M. GATES, UNITED § | TRIAL-BY-JURY DEMANDED | |
| STATES SECRETARY OF DEFENSE, § | Pursuant to 28 USC §1861 and | |
| BARACK HUSSEIN OBAMA, ***de facto*** § | Seventh Amendment | |
| PRESIDENT of the UNITED STATES, § | | |
| Defendants. § | | |

**COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, and
INJUNCTIVE RELIEF: 10 U.S.C. §938 and Army Regulation 27-10**

1.    Comes now the Plaintiff Captain Connie Rhodes, M.D. F.S., with this

Complaint, Declaratory Judgment, and Application for a Temporary Restraining

Order and Preliminary Injunction.

**COUNT I: DECLARATORY AND INJUNCTIVE RELIEF DUE TO
UNCONSTITUTIONAL STATUTES, ILLEGAL ORDERS, AND LACK OF
ADMINISTRATIVE OR LEGAL REMEDY**

2.    Plaintiff Rhodes' seeks an immediate temporary restraining order and

preliminary injunction pending entry of a permanent injunction and final

declaratory judgment that this court restrain the Army from enforcing its orders against her until this Court has rendered a final determination that Title 10 U.S.C. §938 (Article 138 UCMJ), both on its face and as implemented by Army Regulation 27-10, are unconstitutional.

3.    Plaintiff alleges that these statutes are unconstitutional on their face and as applied because they do not even tangentially address the question of army determination of the "lawful" status of orders or the identity of national enemies, foreign or domestic.  In short, Plaintiff alleges that she requires injunctive relief because she has no adequate remedy at law: if she is forced to comply with illegal orders, rendered by an unconstitutional chain of command, in violation of her oath and conscience, the damage will be done and irreparable by any legal remedy including damages.

4.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of herself and all other commissioned officers similarly situated, who have been since January 21, 2009, or may be at any time in the future deployed outside of the United States based on orders issued by any of the Defendants while 10 U.S.C. §938 and/or Army Regulation 27_10 remain in place depriving Plaintiff and all other similarly situated officers from obtaining stays of orders to deploy to theatres of international conflict pending determination of the lawful status of such orders, or the Constitutional status of the Presidency and Presidentially appointed Secretary of Defense, and Department of Defense of this current *de facto* administration.

5.    Plaintiff prays for a hearing on class certification concerning this question be heard not less than 30 days after the First Defendant's answer or initial

responsive motion nor more than 75 days after such answer or response has been filed and served on Plaintiff's counsel.

6.    Plaintiff and all other officers similarly situated have no adequate remedy at law because neither the aforementioned statute Title 10 U.S.C. §938 nor the army regulation implementing it AR 27_10) provide any procedural means temporarily to stay the execution of orders pending determination of legality as required by the officer's oath.   Plaintiff and all other officers similarly situated have suffered and will continue to suffer irreparable injury from the absence of any certain way of challenging or verifying the lawful status of orders or constitutional status of the chain of command nor the identity of all enemies foreign and domestic within the present statutory and regulatory regime.

7.    This Court has Jurisdiction pursuant to 28 U.S.C. §§1331 (Federal Question), §1343 (Civil Rights), and §1346 (United States Defendant).  Venue is proper due to the need to restrain and enjoin Plaintiff's deployment from Fort Benning.

8.    Plaintiff Captain Connie Rhodes, M.D., F.S., as an individual Plaintiff, now suffers will suffer further irreparable injury due to forced and involuntary compliance with unlawful and/or unconstitutionally rendered orders, against her conscientious objection and loyalty oath as an officer, if she should be compelled to comply with illegal orders to deploy abroad entered without any adequate legal means of temporarily suspending the operation of these orders pending a final determination of their legality.

9.    Gone are the days, if they ever existed in these United States, when Army Officers are entitled to obey all orders, regardless of their apparent legality,

constitutionality, or service to the nation.

10.   United States public policy favors an army whose corps of commissioned officers obeys their oaths to uphold the constitution and defend the nation against all enemies foreign and domestic, who have the foresight to "look before they leap", who know that "haste makes waste", and that any and every substantial doubt concerning the legality or constitutionality of orders to engage in potentially fatal and destructive military conflict abroad should always be resolved in favor of caution and reticence to refuse to follow those orders.

11.   Public policy since Andersonville during the War Between the States, the Massacre at Wounded Knee, My Lai in Vietnam, and  most recently Guantanamo and Abu Ghraib, as well international law since Nurnberg, Bosnia-Serbia-Kosovo, Darfur, Burundi, and Somalia, all favor the notion that responsible military officers MUST and SHOULD at all times question the legality and propriety of orders which come from doubtful or questionable sources, or under circumstances which give rise to an appearance of impropriety or illegitimacy.

12.   This Plaintiff Captain Connie Rhodes, M.D., F.S., at the time of her original induction into service, took the United States, military oath of an enlisted soldier, which reads:

> "I, Captain Connie Rhodes, M.D., F.S., do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to the regulations and the Uniform Code of Military Justice. So help me God."

**13.   Later, however, she took the superceding and superior oath of an officer of the United States Armed Forces, as follows:**

*Complaint for Damages, Declaratory Judgment, and*                    4
*Rule 65 Application for TRO and Preliminary Injunction*

**"I, Captain Connie Rhodes, M.D. F.S., having been appointed an officer in the Army of the United States, as indicated above in the grade of Captain do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign or domestic, that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservations or purpose of evasion; and that I will well and faithfully discharge the duties of the office upon which I am about to enter; So help me God." (DA Form 71, 1 August 1959, for officers.)**

14.    **The oath of a military officer is based on 5 U.S.C. §3331:**

**An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath: "I, AB, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." This section does not affect other oaths required by law.**

See also: http://www.history.army.mil/faq/oaths.htm

15.    Plaintiff Captain Connie Rhodes, M.D., F.S., has never sworn to obey the orders of THIS President, the current ***de facto*** President of the United States.

16.    But in historical and current legal fact, no commissioned officer ever swears (as such) to obey the orders of any President.

17.    Rather, Plaintiff Captain Connie Rhodes assumed and undertook, and still assumes and undertakes the obligation to defend the Constitution against all enemies, foreign and domestic.

18.    Plaintiff Captain Connie Rhodes, M.D., F.S., submits that she has severe mental reservations about obeying the commands of the current ***de facto***

President and that she cannot in fact in good conscience do so.

19.    Further Plaintiff Captain Connie Rhodes, M.D., F.S., asks this Court to declare and adjudge that both Title 10 U.S.C. §938 and the Army Regulations implementing the same offer (AR 27_10) provide no remedy whatsoever and in fact place an officer in the utterly untenable position of having to act obediently against his or her conscience or else to risk Court Martial by disobedience.

20.    The law as currently enacted and implemented offers no simple, direct, or reliable administrative (or any other means internal to the army) by which an officer can verify the legality either of any particular order or of the legitimacy of the officers who purport to render legitimate commands.

21.    Plaintiff Captain Connie Rhodes, M.D., F.S, submits and charges that the current ***de facto*** President is an illegal usurper, an unlawful pretender, an unqualified imposter and Plaintiff Captain Connie Rhodes, M.D., F.S., submits that she cannot lawfully act under his authority, but that she is being forced to do so without ANY opportunity or remedial avenue whatsoever.

22.    It is meet and right and our bounden duty: it is lawful, right and proper and in fact mandated by ***her oath*** that an officer, pursuant to ***her oath*** to defend against all enemies, foreign and domestic, should have a right and effective administrative or judicial means to challenge (within the reality of military time and frameworks), and a reasonably speedy and expedient route of appeal any denial of a challenge the chain of command originating from a suspected Presidential Usurper (and consequently illegitimate Secretary of Defense and an illegal Department of Defense hierarchy).

23.    Plaintiff Captain Connie Rhodes, M.D., F.S., demands that this court

afford her such an opportunity to obey the dictates of her moral conscience, and to declare and adjudge in her favor that such obedience is required of her and all other officers by their Oath, by the Constitution, and by the public policy of and concerning the United States Government, including but not limited to the army.

24.    Plaintiff submits that the reservations under which she would be forced to act if she were forced and required against her will to obey the orders for her to serve this President, this Secretary and Department of Defense, would not only hinder and impair her ability to act effectively; Plaintiff contends, that in reality, to force her to serve under this illegitimate commander-in-chief, this Secretary and Department of Defense appointed by a usurper would constitute involuntary servitude or judicially sanctioned rape of her individual autonomy.

25.    Plaintiff submits that the reservations under which she would be forced to act if she were forced and required against her will to obey the orders for her to serve this President are neither conjectural nor speculative nor merely based on opinion or doubt.

26.    Rather the vast preponderance of the credible evidence, all of the clear and convincing evidence, and some facts indicate beyond reasonable doubt that the President is an alien, possibly even an unnaturalized or even an unadmitted illegal alien (admitted just a few days ago, by United States Representative Diane Watson of California's 33rd Congressional District to have been born in Kenya), without so much as lawful residency in the United States.   Some of the relevant evidence is shown in Exhibit B (Affidavit of Neal Sankey with attachments) and Exhibit B (August 1, 2009 released copy of Kenya Birth Certificate).

27.    This Plaintiff cannot lawfully obey orders from this impersonator who sits

*Complaint for Damages, Declaratory Judgment, and*                          7
*Rule 65 Application for TRO and Preliminary Injunction*

as Commander-in-Chief; this Plaintiff cannot in good conscience obey orders originating from a chain of command from this merely *de facto* President; this Plaintiff cannot be lawfully compelled to obey this *de facto* President's orders.

28.   This Court should intervene now to grant both temporary and permanent injunctive relief and declaratory judgment because the United States Code and Army afford her no relief, aside from reliance upon her oath, which she now asserts---to defend her against the monstrosity of being compelled to wage war under an illegal dictator compared by many and actually comparable to Adolph Hitler, Joseph Stalin, Mao Tse-Tung, Idi Amin, and Francois and Jean-Claude Duvalier, especially when this leader has repeatedly expressed his admiration for Fidel Castro Ruz and other communist leaders. The recitation of these names of historical infamy, except for that of Cuba's 50 year dictator Fidel Castro Ruz, for whom the current *de facto* President has professed admiration, does not necessarily reflect directly on the philosophy of the current *de facto* Presidential Administration or on Plaintiff's opinion of the individual current occupying the position of Commander-in-Chief of the United States Armed Forces.

29.   The recitation of these names is, however, intended to underline the importance of the officer's oath to uphold the constitution and protect the United States from all officers foreign and domestic.  Knowing the danger which such  an ethical oath might pose to them, the Nazi regime in Germany required all officers and soldiers to swear blind allegiance to the Fuhrer, and not to any institutions or ideals, not even  (except indirectly, through the Fuhrer) the "Vaterland."

30.     Plaintiff Captain Connie Rhodes, M.D., F.S., asks this Court to declare and adjudge that if it were shown by clear-and-convincing evidence that a person took

the office under false pretenses of constitutional qualifications), such person is a domestic enemy, and constitutes a clear and present danger as an enemy to the constitution and laws of the United States of America.

31.    The Founding Fathers had the foresight to protect and secure against a situation such as that now facing the United States.

32.    Plaintiff Captain Connie Rhodes, M.D., F.S., asks this Court further to declare and adjudge that the officer's oath is and should always be, under the Constitution, construed as a safeguard to protect the Constitution against a corrupt elected government.

33.    Plaintiff Captain Connie Rhodes, M.D., F.S., asks this Court to declare and adjudge that Officers have an obligation to defend the Constitution.

34.    The officer oath does not even mention following the UCMJ laws as does the enlisted oath.  Further, a card entitled "Army Values" issued by the United States Army (Exhibit D), commands all soldiers in part as follows:

> "Bear truth faith and allegiance to the United States Constitution, the Army, your unit, and other soldiers."
> "Put the welfare of the Nation, the army, and your subordinates before your own."
> "Do what's right, legally and morally."
> "Face fear, danger, or adversity (physical or moral)."

35.    Title 10, Subtitle A, Part II of the United States Code contains the Uniform Code of Military Justice (UCMJ).  10 U.S.C. §890 (ART.90), makes it an offence subject to court-martial if any military personnel "willfully disobeys a **lawful** command of his [her] superior commissioned officer," 10 U.S.C. §891 (ART.91) "**lawful** order of a warrant officer", and most importantly, 10 U.S.C. §892 (ART.92) provides court-martial for any officer who

(1) violates or fails to obey any **lawful** general order or regulation;
(2) having knowledge of any other **lawful** order issued by a
member of the armed forces, which it is his duty to obey, fails to
obey the order; or
(3) is derelict in the performance of his duties;

36.    In each case, Plaintiff submits that it is implicit though not expressly stated that an officer is and should be subject to court-martial, because s**he will be derelict in the performance of *her* duties, if she does not inquire as to the lawfulness, the legality, the legitimacy of the orders which she has received, whether those orders are specific or general.**

37.    Unfortunately the Uniform Code of Military Justice as currently drafted and implemented does not provide a means WHATSOEVER for ascertaining the legality of orders, and accordingly, this Plaintiff is left with no choice but recourse to the ordinary civil courts of the United States to seek a determination of what she considers to be a question of paramount constitutional and legal importance: the validity of the chain of command under a President whose election, eligibility, and constitutional status appear open to serious question.

38.    Accordingly, Plaintiff Captain Connie Rhodes, M.D., F.S., comes to this Court because she cannot afford to breach and must preserve the status quo, and that this Court should enable her to comply with an obey her officer's oath of fealty to the Constitution of the United and obligation to defend this Country against all enemies, foreign and domestic, or to prevent irreparable injury to her career, and that this Court must immediately intervene and afford her the Temporary Relief to which she is entitled under the First, Fifth, and Ninth Amendments to the Constitution of the United States.

39.  **The specific relief sought from this Court is**

**40.  FIRST, an order suspending her deployment to Afghanistan (now scheduled for September 5, 2009, from Fort Benning within the jurisdiction of this Court for the Middle District of Georgia, see Exhibit A),**

**41.  SECOND an order temporarily enjoining the enforcement of 10 U.S.C. §§937-938 according to the provisions of the implementing army regulation 27-10, and for injunctive protection from the Secretary and Department of Defense, Defense Security Services Agency, and the President from engaging in retaliatory conduct for Plaintiff's challenge to the President's constitutional authority as Commander-in-Chief, and**

**42.  THIRD for a mandatory injunction or other equitable order (e.g. Mandamus) that the United States Army amend its procedures for challenging the constitutionality and general lawful status of orders to afford full due process protection consistent with every commissioned officer's obligation to uphold *her* oath.**

**<u>COUNT II:   INJUNCTION AGAINST RETALIATION FOR</u>**
**<u>CONSCIENTIOUS OBJECTOR STATUS</u>**

43.   **Plaintiff realleges ¶¶1-42 of this her Original Complaint as if the same were fully copied and restated herein below.**

44.   **Plaintiff further seeks a Prohibitory (Negative) Temporary Restraining Order and/or Preliminary Injunction forbidding the Department of Defense from taking any retaliatory or "blacklisting" operations against Plaintiff Captain Connie Rhodes, M.D. F.S.**

45.   Plaintiff Captain Connie Rhodes, M.D. F.S. submits and contends that she has and will continue to have an absolute and unassailable obligation to question the legality of her deployment orders until such time as this Court renders a final judgment in her favor.

46.   CONSCIENTIOUS OBJECTOR STATUS: And, for this reason, and this reason alone, because she obeyed her oath and moral conscience, this Court should protect Plaintiff Connie Rhodes from any form of Department of Defense or other governmental retaliation.

47.   **Balance of the Equities: Plaintiff will suffer irreparable, in fact incalculable, injury** if this preliminary injunction is not granted, but the cost of compliance with the TRO and Preliminary Injunction to the Department of Defense is minimal (and might actually save expenditure of government funds and conserve resources), while the cost to Plaintiff Captain Connie Rhodes, M.D. F.S. of Defamation and interference is immense, so that the balance of equities favors the granting of this TRO and preliminary injunction without bond.

48.   **Finally, because of the outrageous and illegal nature of the repressive and retaliatory conduct of the Department of Defense, already demonstrated in other related or similar cases, Public Policy favors the entry of this Temporary Restraining order and, upon hearing a Preliminary Injunction during the pendency of this action.**

49.   Furthermore, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks class action certification of her action for injunction against retaliation and suppression of the officer's oath, and the First Amendment Right to Petition for Redress of Grievances regarding the same, on behalf of herself and

all other commissioned officers similarly situated since January 21, 2009, who have been or may be ordered to deploy abroad in the service of this illegitimate, unlawful, and unconstitutional, but de facto Presidential administration, including the current Secretary of Defense and Department of Defense.

## BACKGROUND AND PREDICATES TO THIS COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, AND RULE 65 APPLICATION FOR INJUNCTIVE RELIEF

**50.**  On or about August 17, 2009**,** Plaintiff Captain Connie Rhodes, M.D. F.S. received from the Defendants in this cause what appeared to be facially valid orders mobilizing her to active duty as a medical specialist with the United States Army at Fort Benning for frontline "GWOT[1]" service in Iraq on Saturday, September 5, 2009, actual deployment to be on September 12th.

**51.**  Plaintiff, objects on moral, ethical, and constitutional grounds, to the ***de jure*** legitimacy of the U.S. Army chain-of-command under the ***de facto*** Commander-in-Chief Barack Obama, who is a constitutionally ineligible who appears, according to the officer's oath which Plaintiff took, to be an unlawful usurper.

**52.**  On April 21, 2009, acting in conjunction with other military personnel, and acting by and through ***her*** undersigned counsel, Plaintiff had submitted a demand substantively in accord with Article 138 of the Uniform Code of Military Justice (Exhibit E).   Similar demands were also submitted to numerous authorities in the State of Georgia (Exhibits G-H).

**53.**  On July 3, 2009, Plaintiff's counsel received summary notice Captain James Crawford, Legal Counsel for Admiral James Mullen, Chairman of Joint Chiefs of

---

[1] "Global War on Terrorism."

Staff, that there was no recourse against or concerning the allegedly fatal constitution defect in the chain of command through the military grievance procedure set forth in Article 138 (Exhibit F).

**54.** Having thus substantially attempted to satisfy administrative process and been rejected at the highest levels, Plaintiff filed an Original Application for TRO on Friday August 28, 2009 in the Western District of Texas (San Antonio Division, where Fort Sam Houston is located, and to which location Plaintiff had first been ordered to report)(2009cv00703 Judge Xavier Rodriguez).

55.   This original application was denied on the same day as it was filed, on the grounds that Plaintiff's objections to the Constitutionality of the current Presidential Administration, Chain of Command, and Department of Defense were speculative and based on opinion, belief, and conjecture. The Plaintiff in this present Complaint has alleged and shown that there is nothing speculative or conjectural about the unconstitutional nature of the Presidential Administration.

56.   Plaintiff prays for a hearing on class certification concerning this question be heard not less than 30 days after the First Defendant's answer or initial responsive motion nor more than 75 days after such answer or response has been filed and served on Plaintiff's counsel.

## VENUE IS PROPER IN MIDDLE DISTRICT OF GEORGIA

57.   The Middle District of George plainly has proper venue and the authority to hear this case pursuant to 28 U.S.C. §§1346 and 1402(a)-(b), because this is Plaintiff's last stop on Plaintiff's Road to Basra and Baghdad.

58.   Further, even if the original orders were to be revoked against Captain Connie Rhodes, M.D. F.S., the Army should not be allowed to evade review of the

questions presented as matters for DECLARATORY JUDGMENT pursuant to both 28 U.S.C. §§2201-2202 and 42 U.S.C. §§1983-1988(a) merely by intentionally revoking the orders once challenged, and a TRO and Preliminary Injunction are appropriate regarding the two key constitutional questions noted above, concerning (1) the validity of any orders issued under a chain of command originating from Barack Hussein Obama and (2) the urgent need for a legal and constitutional avenue to be open by which officers may challenge any and all orders, and aspects of their orders, which might appear to them reasonably to be unlawful and therefore a violation of the officer's oath.

59.   Plaintiff's Application for TRO and Preliminary Injunction presents: 1) an unsettled legal issues of public interest and importance and 2) an issue of a recurring nature that will escape review unless the Court exercises its discretionary jurisdiction.

**60.**   Furthermore, although the Western District of Texas decided to eschew its responsibility and to disavow the substantial nature of Plaintiff's claim, that Court did not enter any final judgment nor even close the case, so there is no ***res judicata*** effect---in essence, the urgency of the approaching deadline simply means that the critical venue has changed to Georgia.

## COUNT III:
## DECLARATORY JUDGMENT: EXECUTIVE ORDERS OF Jan. 21, 2009

**61.** Plaintiff realleges ¶¶1-60 of this her Original Complaint and incorporates the same by reference as if fully copied and restated herein below.

**62.** Plaintiff asks this Court to declare and adjudge that the President is illegitimate, and cannot serve as Commander-in-Chief, that this illegitimacy results from a complete lack of constitutional qualifications and possible if not certain status as a domestic enemy, or usurper contrary and dangerous to the Constitution of the United States.

**63.** Plaintiff further asks this Court to declare and adjudge that the Executive Order of January 21, 2009, is suppression of evidence which each commissioned officer requires adequately to perform his or her duty, and as such constitutes an infringement upon and violation of the officer's oath to uphold the Constitution and Laws of the United States, and to Defend this country against all enemies, domestic and foreign, in that this Executive Order cloaks the President in a shroud of secrecy which commissioned officers cannot penetrate to determine the lawful or constitutional status of the chain of command.

**64.** Plaintiff asks this court to declare and adjudge that all commissioned officers on active duty are and ought to be excused from any further compliance with any orders issued by this administration, except those necessary to defend this nation against invasion and repel any actual attack by foreigner armed forces attacking or invading the territory of the United States, until such time as the Executive Orders of January 21, 2009, have been repealed, rescinded, and voided, and all information thereby concealed has been revealed to the officers of

the United States Armed Forces and a determination made by those officers regarding the legitimacy of the current Presidential Administration.

**65.** Plaintiff files this suit on behalf of herself and all commissioned officers similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure as a class action, and requests a hearing on class certification be held not less than 30 days after the initial answer or response of the first answering Defendant nor more than 75 days after such answer or initial response.

**66.** The ***De Facto*** President entered, on his first full day in office, the following order concerning Presidential Archives, which was worthy of Richard M. Nixon at the height of Watergate (See also Exhibit C):

> Monday,
> **January 26, 2009**
> **Part VIII**
> **The President**
> **Executive Order 13489—Presidential**
> **Records**
> **Executive Order 13490—Ethics**
> **Commitments by Executive Branch**
> **Personnel**
> **Memorandum of January 21, 2009—**
> **Senior White House Staff Pay Freeze**
> **Presidential Documents**
> 4669
> Federal Register
> Vol. 74, No. 15
> Monday, January 26, 2009
> Title 3—
> The President
> Executive Order 13489 of January 21, 2009
> Presidential Records
> By the authority vested in me as President by the Constitution and the
> laws of the United States of America, and in order to establish policies
> and procedures governing the assertion of executive privilege by incumbent
> and former Presidents in connection with the release of Presidential records
> by the National Archives and Records Administration (NARA) pursuant
> to the Presidential Records Act of 1978, it is hereby ordered as follows:
> Section 1. Definitions. For purposes of this order:
> (a) "Archivist" refers to the Archivist of the United States or his designee.
> (b) "NARA" refers to the National Archives and Records Administration.
> (c) "Presidential Records Act" refers to the Presidential Records Act, 44
> U.S.C. 2201–2207.
> (d) "NARA regulations" refers to the NARA regulations implementing
> the Presidential Records Act, 36 C.F.R. Part 1270.

(e) "Presidential records" refers to those documentary materials maintained by NARA pursuant to the Presidential Records Act, including Vice Presidential records.

(f) "Former President" refers to the former President during whose term or terms of office particular Presidential records were created.

(g) A "substantial question of executive privilege" exists if NARA's disclosure of Presidential records might impair national security (including the conduct of foreign relations), law enforcement, or the deliberative processes of the executive branch.

(h) A "final court order" is a court order from which no appeal may be taken.

Sec. 2. Notice of Intent to Disclose Presidential Records. (a) When the Archivist provides notice to the incumbent and former Presidents of his intent to disclose Presidential records pursuant to section 1270.46 of the NARA regulations, the Archivist, using any guidelines provided by the incumbent and former Presidents, shall identify any specific materials, the disclosure of which he believes may raise a substantial question of executive privilege. However, nothing in this order is intended to affect the right of the incumbent or former Presidents to invoke executive privilege with respect to materials not identified by the Archivist. Copies of the notice for the incumbent President shall be delivered to the President (through the Counsel to the President) and the Attorney General (through the Assistant Attorney General for the Office of Legal Counsel). The copy of the notice for the former President shall be delivered to the former President or his designated representative.

(b) Upon the passage of 30 days after receipt by the incumbent and former Presidents of a notice of intent to disclose Presidential records, the Archivist may disclose the records covered by the notice, unless during that time period the Archivist has received a claim of executive privilege by the incumbent or former President or the Archivist has been instructed by the incumbent President or his designee to extend the time period for a time certain and with reason for the extension of time provided in the notice. If a shorter period of time is required under the circumstances

4670 Federal Register/Vol. 74, No. 15/Monday, January 26, 2009/Presidential Documents

set forth in section 1270.44 of the NARA regulations, the Archivist shall so indicate in the notice.

Sec. 3. Claim of Executive Privilege by Incumbent President. (a) Upon receipt of a notice of intent to disclose Presidential records, the Attorney General (directly or through the Assistant Attorney General for the Office of Legal Counsel) and the Counsel to the President shall review as they deem appropriate the records covered by the notice and consult with each other, the Archivist, and such other executive agencies as they deem appropriate concerning whether invocation of executive privilege is justified.

(b) The Attorney General and the Counsel to the President, in the exercise of their discretion and after appropriate review and consultation under subsection (a) of this section, may jointly determine that invocation of executive privilege is not justified. The Archivist shall be notified promptly of any such determination.

(c) If either the Attorney General or the Counsel to the President believes that the circumstances justify invocation of executive privilege, the issue shall be presented to the President by the Counsel to the President and the Attorney General.

(d) If the President decides to invoke executive privilege, the Counsel to the President shall notify the former President, the Archivist, and the Attorney General in writing of the claim of privilege and the specific Presidential records to which it relates. After receiving such notice, the Archivist

shall not disclose the privileged records unless directed to do so by an incumbent President or by a final court order.

Sec. 4. Claim of Executive Privilege by Former President. (a) Upon receipt of a claim of executive privilege by a living former President, the Archivist shall consult with the Attorney General (through the Assistant Attorney General for the Office of Legal Counsel), the Counsel to the President, and such other executive agencies as the Archivist deems appropriate concerning the Archivist's determination as to whether to honor the former President's claim of privilege or instead to disclose the Presidential records notwithstanding the claim of privilege. Any determination under section 3 of this order that executive privilege shall not be invoked by the incumbent President shall not prejudice the Archivist's determination with respect to the former President's claim of privilege.

(b) In making the determination referred to in subsection (a) of this section, the Archivist shall abide by any instructions given him by the incumbent President or his designee unless otherwise directed by a final court order. The Archivist shall notify the incumbent and former Presidents of his determination at least 30 days prior to disclosure of the Presidential records, unless a shorter time period is required in the circumstances set forth in section 1270.44 of the NARA regulations. Copies of the notice for the incumbent President shall be delivered to the President (through the Counsel to the President) and the Attorney General (through the Assistant Attorney General for the Office of Legal Counsel). The copy of the notice for the former President shall be delivered to the former President or his designated representative.

Sec. 5. General Provisions. (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) authority granted by law to a department or agency, or the head thereof; or

(ii) functions of the Director of the Office of Management and Budget relating to budget, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

4671

Federal Register/Vol. 74, No. 15/Monday, January 26, 2009/Presidential Documents

Sec. 6. Revocation. Executive Order 13233 of November 1, 2001, is revoked.

THE WHITE HOUSE,

January 21, 2009.

## WHO IS THIS PLAINTIFF WHO DARES TO COMPASS THE KING? WHO DARES TO CHARGE THAT THE EMPEROR HAS NO CLOTHES?

**67.**  Plaintiff Captain Connie Rhodes, M.D. F.S. is not a pacifist. She does not object to war or the use of military force in the implementation of national policy or the enforcement of international law.  Above all, Plaintiff is not a coward, she is not engaged in mutiny, sedition, insubordination, contempt, disrespect, or any

kind of resistance to any general or specific l**awful** order of which she knows or has received notice.

**68.** Plaintiff Captain Connie Rhodes, M.D. F.S. realized and accepted as a matter of political reality (although it is very hard for her to bear personally) that many would, have, and will criticize or even shun her, saying that she is not acting in the best interests of *her* country for trying to uphold the plain letter of the Constitution.

**69.** Others may, will, and already have cynically ridiculed this Plaintiff when, as an officer responsible not only to obey those above her but to protect those under *her* command, she comes to this Court asking for the right to establish the legality of orders received not only for her own protection, but for the protection of all enlisted men and women who depend on her judgment that the orders she follows are legal.

**70.** Above all, when Plaintiff Captain Connie Rhodes, M.D. F.S. submitted and contended, as she continues to submit and contend, that she filed and will prosecute this lawsuit and seeks a preliminary injunction against the Defendants' enforcement of potentially illegal orders for the benefit of all servicemen and women and for the benefit all officers in all branches of the U.S. Military, she knew that those in power illegitimately may seek to injure her career, although she contends that her purposes are pure and that she should not be punished or subject to any sort of retaliation for exercising her First Amendment Right to Petition for Redress of Grievances.

**71.** Plaintiff knew that, by challenging the legitimacy of the President, she risked all and she did and continues to do so in the conscientious belief that she

does so for not merely her own, but the general good. The United States Department of Defense has sought to punish Plaintiff and destroy her career.

### COUNT IV: Declaratory Judgment & Permanent Injunction
**_PLAINTIFF SEEKS A FIVE-PART DECLARATORTY JUDGMENT AS WELL AS A PERMANENT INJUNCTION TO PROTECT CONSCIENTIOUS DISOBEDIENCE TO UNLAWFUL ORDERS FROM RETALIATION_**

**72.** Plaintiff realleges ¶¶1-71 of this her Original Complaint and incorporates the same by reference.

**73.** *PART A:* Plaintiff asks this Court to find, declare, and adjudge whether, in light of its past conduct and treatment of dissenters, the Department of Defense Defendants has already taken retaliatory action against this Plaintiff through DSS, and whether Plaintiff has and will continue to suffer irreparable injury to *her* career from such retaliation, for which reasons this Court should grant the mandatory and prohibitory injunctions sought and herein prayed for.

**74.** The Plaintiff must now defend her own civil rights, as well as those of all other officers similarly situated (and Plaintiff formal FRCP Rule 23 application for certification of this complaint as a class action).

**75.** *PART B:* Plaintiff prays that this Court will both enter a declaratory injunction defining, and an injunction to protect, preserve, and defend, Plaintiff's right and duty as an officer to exercise and enforce her constitutional right to petition for redress of grievances, including the incompleteness of the law regarding the identity and status of "lawful" orders, and to faithfully execute and perform *her* constitutional duty (oath of office as an officer) and above all her honor and her good name against all those who would and have criticized him for making the decision to stand up and demand proof.

74.   ***Part C:***  The Plaintiff cannot escape from the dictates of her conscience, and the Court by its power to declare, delineate, construe, and apply the law and constitution as applied to this case, as well as render injunctions, should render and hand down sufficient orders to insulate the Plaintiff (and Private Party Defendants/Involuntary Plaintiffs) from governmental oppression upon and against, the well-informed and considered mandates of Plaintiff's conscience and her awareness, her educated consciousness, that all military personnel but especially commissioned officers have an obligation and a duty to only obey Lawful orders and indeed have an obligation to disobey Unlawful orders.

75.   ***Part D:* Plaintiff Captain Connie Rhodes, M.D. F.S. asks this court to declare and adjudge that "unlawful orders" be defined for purposes of this case and for all posterity as including orders by the president which are inconsistent with international law, which do not conform with the constitution, and where the lawful and constitutional status of the orders and the chain of command of such orders are reasonably in doubt, or where the *DE FACTO* PRESIDENTIAL ADMINISTRATION appears to be acting as or on behalf of foreign or domestic enemies of the people of the United States, this is quite possibly the most important count and element of the present complaint for declaratory judgment, because the President can only be President and Commander-in-Chief according to the rule of law and the constitution**.

76.   Plaintiff's, and every officer's, primary and predominant moral and legal obligation is to the U.S. Constitution and not to those individuals who would

issue unlawful orders, especially if those orders are in direct violation of the Constitution and the UCMJ.

77.    In the words of the Henry de Bracton, 13th century English Jurist in his **De Legibus et Consuetudinibus Angliae** (On the Laws and Customs of England, written during the reign of Henry III in the first fifty years after King John's ratification of **Magna Charta** on the field of Runnymede): **Non sub Homine sed sub Deo et Lege** ("Not under Man but Under God and Law," which words are now inscribed over the entrance to the Harvard Law Library, where, ironically enough a certain usurper or pretender to the Presidency allegedly studied law).   By this constitutional motto Bracton meant that the sovereign can only rule so long as he does so according to law and lawful custom and practice, so that a lawless sovereign is only an cannot command his subjects. "A Democratic sovereign is only immune to the degree that he acts in and under the law:" **In Re Publica Non sub Regem sed sub Deo Juridique.**

78.    Nearly 800 years after both Runnymede and Bracton, Professor Hitomi Takemura of Kyushu University recently (December 5, 2008) published a book entitled: **International Human Right to Conscientious Objection to Military Service and Individual Duties to Disobey Manifestly Illegal Orders** (New York: Springer-Verlag).  This book stands as an international legal analysis of the duties of military officers, and it is significant, if not possibly somewhat ironic, that President Barack Hussein Obama has repeatedly argued that the United States should conform itself to international law and customs.

79.    **Part E:**  And, so, still further, Plaintiff seeks a judicial determination by declaratory judgment of whether or not there is a general duty to disobey all

unlawful orders, and Plaintiff moves and requests that this Court determine that there is indeed such a duty.

80.    Although this case is not the place to retry Lt. William Laws Calley and the My Lai Massacre or the more recent scandal relating to Abu Ghraib Prison in Iraq, the question of lawful orders must be addressed in abstract---how can an officer be certain of lawful orders when the administrative procedure provided for such resolution is denied or fails?

81.    Plaintiff asks this Court to declare and outline by declaratory judgment enabling officers to avoiding such disgraceful occurrences as My Lai and Abu Ghraib in the future by deciding, and even at the Preliminary Injunction ordering by way of positive mandate, for example, according to 42 U.S.C. §1988(a) that the army institute procedures and protect Plaintiff's, and all officers', access to courts,

82.    Plaintiff asks this Court to declare and adjudge the procedures and circumstances of when and how an officer, such as the Plaintiff, may seek judicial determination of the lawful or unlawful nature of an order based on a constitutional challenge to the chain of command originating from a probably ineligible President and Commander-in-Chief.

83.    Plaintiff files this suit to clarify how she can both obey all lawful orders and avoid dereliction of her duties so as to escape court-martial under the UCMJ if she does NOT challenge, question, and ultimately deny, if she must do so in accord with her conscience, the legality of the orders she has received.

84.    Plaintiff seeks to avoid not only court-martial in this country, but also treatment as a war-criminal or terrorist, not eligible even for protection under the

Geneva convention, if she were found to be a merely mercenary soldier in a private army of slaves, "owned" or controlled by an unconstitutional and therefore illegal commander, if she does not ask the question: "is this order legal?"

## COUNT V:  AN OFFICER'S RIGHT OR DUTY TO CONSCIENTIOUS OBJECTION TO AN UNCONSTITUTIONAL PRESIDENT?

85.    Plaintiff realleges ¶¶1-84 and incorporates the same by reference as if fully copied and restated herein below.

86.    Plaintiff presents another key question in this case also as one of first impression, never before decided in the history of the United States: Is an officer entitled or even required to refuse to obey or allow others under her command to carry out orders on grounds of conscientious objection to the legitimate constitutional authority of the current *de facto* Commander-in-Chief?

87.    In the alternative, is an officer entitled to a judicial stay of the enforcement of facially valid military orders where that officer can show evidence that the chain-of-command from the commander-in-chief is tainted by illegal activity?  In the alternative, does the issuance of orders based on a constitutionally infirm chain-of-command under Article II create or render military service as a mere "involuntary servitude" in violation of the Thirteenth Amendment which may be judicially enjoined?

88.    Plaintiff seeks temporary and permanent injunctive relief against the United States Department of Defense, and each of Plaintiff's commanding officers, as expressly authorized by 5 U.S.C. §702.

89.    Specifically, Plaintiff alleges that she will suffer legally cognizable but

irreparable injury because of agency (U.S. Department of Defense) action if the order attached as Exhibit A were to be enforced, and that Plaintiff is adversely affected and aggrieved by this agency action within the meaning of Article II, §§1-2 of the United States Constitution, and is entitled to judicial review thereof.

90.    This action is filed in this United States District Court for the Middle District of Georgia, which venue is appropriate pursuant to 28 U.S.C. §402 because of Plaintiff's assignment to be deployed from Fort Benning in this District and because she is specifically subject to the Command of Colonel Thomas D. MacDonald and the Deputy Garrison Commander George Steuberat Fort Benning, and both of these individuals who must be enjoined from enforcing the orders against Plaintiff or seeking to prosecute her pursuant to rules Court Martial in retaliation for her challenge to the chain of command reside in this District.

91.    This suit is filed seeking injunctive and declaratory relief (although  money damages under ***Bivens*** may be added after proper demand, both individually and as a class action)

92.    Plaintiff states a claim that the Department of Defense and its officers, including the ***de facto*** President Barack Hussein Obama, as ***de facto*** Commander in Chief, together with Secretary of Defense Robert M. Gates, and Colonel Thomas D. MacDonald and the Deputy Garrison Commander George Steuberas employees thereof, have acted illegally/i.e., without actual legal authority (valid chain of command) in issuing the original deployment order (Exhibit A).

93.    In the alternative, Plaintiff submits that the Defendants have acted

illegally and without constitutional right under color of legal authority by pretending that a lawful chain of command under the authority of a constitutionally qualified and elected President has been established pursuant to Article II, §§1-2 of the United States Constitution, when in fact, the current ***de facto*** Commander-in-Chief is not constitutionally qualified nor was he legally elected or appointed to succeed to the office of President of the United States.

**COUNT VI:**
**ADMINISTRATIVE PROCEDURE ACT---5 U.S.C. §702, AND FEDERAL COMMON LAW apply to the PRESIDENT AS COMMANDER-in-CHIEF**

94.    Plaintiff realleges ¶¶1-93 and incorporates the same by reference.

95.    Pursuant to 5 U.S.C. §702 this Application and Complaint may proceed and shall not be dismissed nor relief therein be denied on the ground that the Court may determine that this suit is filed against the United States or that the United States is an indispensable party[2].

96.    This court is required by federal common law to enter a Preliminary Injunction in this case and to enjoin Defendants' persecution of and retaliation against Plaintiff Captain Connie Rhodes, M.D. F.S. for questioning the legitimacy of the chain of command predicate to the validity of to the orders contained in Exhibits A, B, and C for the following reasons:

97.    The United States Supreme Court has held that Federal rules are "necessary to protect uniquely federal interests".  ***Texas Industries, Inc., v***

---

[2]  5 U.S.C. §702 states in relevant part:
> The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

*Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981), *quoting* **Banco Nacional de Cuba v. Sabbatino,** 376 U.S. 398, 426 (1964).

98.    Included in this category is the creation of federal common law to protect federal interests in international law, which are particularly relevant to the legitimacy of United States military presence and intervention in foreign countries, of which the Plaintiff herein will be an integral part and instrument if the orders set forth in Exhibit A are not enjoined from enforcement.  *Id.*

99.    The issue or question raised by this suit is uniquely federal and properly (and in fact necessarily) subject to the exercise of federal power: the question whether the constitutional legitimacy of the chain of command under a constitutionally legitimate commander-in-chief pursuant to Article II, §§1-2 of the Constitution is essential to the maintenance of balance of powers and separation of powers under the constitution, and cannot be lightly dismissed in light of the Plaintiff's evidence that the **de facto** President of the United States is not only constitutionally unqualified, but procured his election by fraudulent and illegitimate means which may constitute a pattern of racketeering utilizing the apparatus of corrupt organizations in violation of 18 U.S.C. §1961 *et seq*.

100.   A substantive federal rule of law to govern this issue has never been developed, presumably because there has never been a serious challenge to the constitutional eligibility and legitimacy of any commander-in-chief of the United States Armed Forces prior to the apparent election of Barack Hussein Obama, but the novelty and uniqueness of this situation only underscores and does not diminish the critical nature of the inquiry to be made.  *See, e.g.,* Martha A. Field "Sources of Law: the Scope of Federal Common Law", **99 Harvard L. Rev.**

**881, 886 (1986)** and David J. Barron & Martin S. Lederman "The Commander-in-Chief at the Lowest Ebb—Framing the Problem, Doctrine, and Original Understanding," **121 Harvard L. Rev. 689, 712, 748 (2008)**.

101.    There has never been a greater need to create federal law to safeguard federal interests than now, when the constitutional legitimacy of the President and by extension of all exercises of Presidential power are called into question. There are no direct precedents in all of United States History, there are no state rules which could reasonably be applied.

102.    To paraphrase the United States Supreme Court's holding in *Clearfield Trust Co. v. United States*, "the rights and duties of the United States" in regard to the constitutional legitimacy and qualifications of its highest officers "are governed by federal rather than" any other law.  **318 U.S. 363 at 366 (1943).**

103.    "The authority to" inaugurate the President and determine whether his orders are entered with legitimate authority or not have "its origins in the Constitutions and the Statutes of the United States and [is] in no way dependent upon the laws of" any particular state or foreign jurisdiction.  *Id.* at 366-7.

104.    Few will dispute that the legitimacy of the President and of the Presidency itself is a matter of paramount concern (even exceeding that of the government issued commercial paper/checks at issue in *Clearfield Trust*) and importance to the several states and all foreign jurisdictions which may have to deal with the most powerful nation in the world.  As noted above, the legitimacy of the Chief Executive and Commander-in-Chief affects the relationships of the Federal Government particularly with those nations in which this nation takes and

implements action and policy by and through its military forces on foreign soil.

*See also* Erwin Chemerinsky **Federal Jurisdiction, 5th ed. (2007)** 363.

105.    Thus, federal interests of incomparable dimensions exist which justify this court's creation of federal law and no challenged action instituted by the executive branch should be allowed to proceed until clear criteria have been established to guide this determination.  To hold otherwise would be to reduce the constitution to notions of ***realpolitik*** and a government of men asserting their power by force rather than laws.

106.    Plaintiff submits that in the absence of a constitutionally valid and legitimate commander-in-chief, she cannot serve to impose the military might and power of this country in a foreign land as a matter of principle.

107.    Plaintiff asks that she therefore be granted status as a conscientious objector on moral, religious and philosophical grounds, not that Plaintiff is a pacifist or in any way opposed to the use of military force to further the legitimate interests of the United States, but on the grounds that she cannot abide the notion that she might possibly be implementing by force the policy of a government whose executive power and commander-in-chief may have assumed power unlawfully and might have established themselves on a foundation of fraud, lies, and deceit.

**COUNT VI: THE CONSPIRACY TO DEFRAUD THE PEOPLE; THE PATTERN OF RACKETEERING AND CORRUPT ORGANIZATION**

108.   Plaintiff Captain Connie Rhodes, M.D. F.S. realleges ¶¶1-107 and incorporates all the material allegations and legal contentions of the same by reference as if fully copied and restated herein below.

109.   Plaintiff's lifelong business is and revolves around the United States Military.  Plaintiff has a proprietary interest in her status as an officer and in her good name and reputation.

110.   The evidence contained in Exhibit E shows that Barack Hussein Obama might have used as many as 149 addresses and 39 social security numbers prior to assuming the office of President.

111.   The social security number most commonly used by Barack Hussein Obama, is one issued in the state of Connecticut, the state where Barack Hussein Obama never resided and it shows him to be 119 years old.

112.   This coupled with the fact that Mr. Obama's grandmother, Madeline Dunham was a volunteer at the Oahu Circuit Court Probate Department and had access to the social security numbers of the deceased, constitutes circumstantial evidence casting serious doubt on the legitimacy of Mr. Obama and his claims of being born on US territory.

113.   Exhibit F, the expert affidavit of renowned forensic document examiner Sandra Ramsey Lines, states that the certification of live birth posted by Mr. Obama as verification of his legitimacy, cannot be verified as genuine, and should be presumed fraudulent.

114.   This doubt is further reinforced by the fact that the Hawaiian statute 338

*Complaint for Damages, Declaratory Judgment, and*                          31
*Rule 65 Application for TRO and Preliminary Injunction*

allows **foreign born** children of Hawaiian residents to obtain Hawaiian birth certificates, that those birth certificates can be obtained **based on a statement of one relative only** without any corroborating evidence from the hospital; that "**late birth certificates**" (i.e. non-contemporaneously, post-facto, in two words "potentially fabricated") can lawfully, under this statute, be obtained at any time later in life.

115.    That is of paramount concern, as Barack Hussein Obama's original birth certificate was never provided by the state of Hawaii, but only a statement that there is an original "long birth certificate" document on file.

116.    The statement repeatedly provided by Hawaiian officials is quite simply incomplete, evasive, and without explanation of critical details: namely, whether it is a foreign birth certification or one obtained based on a statement of one relative only, or a late certification or amended one, obtained upon adoption by his stepfather.

117.    In addition or in the alternative, Plaintiff submits that, absent clearly established and indisputable proof of constitutional right to serve as commander-in-chief, the army becomes merely a corps of chattel slaves under the illegitimate control of a private citizen, in violation of the Thirteenth Amendment and that this Plaintiff is entitled to constitutionally complete and sufficient proof of *her* commander-in-chief's eligibility and entitlement to serve in this capacity under Article I, §§1-2 prior to obeying orders from a man against whom mountains of evidence now exist to show that Barack Hussein Obama obtained the office of President without legal qualifications, and further that he did so by and through a continuous pattern and program of fraud and deceit.

**COUNT VIII:   CIVIL RIGHTS VIOLATIONS ACTIONABLE UNDER 42 U.S.C. §§1983, 1988(a)(a)**

118.    Plaintiff realleges ¶¶1-118 as if fully copied and restated herein.

119.    A long line of cases now exists to show that 42 U.S.C. §§1983, 1988 may be used to bring suit against Federal Officials for violations of constitutional rights, and 42 U.S.C. §1988(a) specifically authorizes courts to adapt or fashion common law remedies to prevent constitutional violations where no adequate remedy exists or is set forth in law---such specially fashioned remedies would include expressly empowering military officers to challenge orders based on constitutional defects in the chain of command by means of equitable judicial proceedings such as this one, and to permit injunctions against deployment where the chain of command is reasonably subject to question.

120.    Critical among the cases applying §1983 to suits against Federal (indeed, Military) officers, is the 1982 case of *Harlow v. Fitzgerald*, **457 U.S. 731 (1982)** and closely related successor *Mitchell v. Forsyth*, **472 U.S. 511 (1985).**  These cases held that U.S. Government officials (such as Defendants in this case) could only claim qualified immunity, and that even qualified immunity was available to them only if they followed well-established law and norms of construction or interpretation of law.

121.    Plaintiff submits and here asks this Court to find, declare, and hold that the requirement that the President of the United States be a natural born citizen, set forth in Article II, §1 of the Constitution, creates a "clearly established ... constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, **457 U.S. at 818.**

122.   The right in question which Plaintiff asks this Court to define and recognize as a matter of first impression should be defined either as the unilateral right to disobey or the right to seek a judicial injunction against the enforcement of orders given on the unproven ***de facto*** authority of a government headed by a man against whom such circumstantial and direct evidence implies high likelihood of fraud as the affidavit of Neal Sankey (attached as Exhibit B) can be assembled from public records alone, but this is exacerbated by Exhibit C.

123.   In other words, Plaintiff asks this Court to rule, declare, and adjudge, pursuant to 42 U.S.C. §1988(a), that an officer of the Army of the United States (all officers)!) must have the right to question apparently illegitimate authority in the courts or else in the course of ***her*** employment as an officer directly within the army chain of command or in both capacities and by both manners.  Current law does not establish any means of verifying the constitutional legitimacy of orders or the constitutional chain of command.

124.   Unlike the Federal officers in ***Wilson v. Layne*** who brought reporters along with them when they executed search warrants (526 U.S. 703 [1999]), there IS a simple consensus of authority on the question of the requirement that the President be a natural born citizen sufficient to provide a basis for a reasonable army officer to doubt that her country's commander-in-chief might be accepted as legitimate outside the United States.

125.   This Court should rule, especially in light of the January 21, 2009, Executive Orders referenced above, together with (as yet incompletely authenticated birth certificate attached as Exhibit C), that a reasonable officer has the right to ask, indeed the duty to demand, under the principles of balance of

***Complaint for Damages, Declaratory Judgment, and***                    34
***Rule 65 Application for TRO and Preliminary Injunction***

powers and checks and balances of one branch of government against each and every other branch, that this federal court enjoin her ***imminent*** overseas deployment until such time as the answers raised by Barack Hussein Obama's use of multiple addresses (almost all outside of any reasonable connection to his "official" life history) and social security numbers, including at least one social security number of a deceased person (Exhibit B).

126.   That this Plaintiff claims status as a conscientious objector must be clarified and emphasized in several ways: Plaintiff is no pacifist, nor an anti-war protester.  Plaintiff actually does want to go to Afghanistan and she verifies this fact, as she does this entire petition.

127.   Plaintiff believes that her service in Iraq could be positive and serve the interests of world peace, the advancement of the people of Iraq, and the security of the people of the United States (and the allies of the United States in Europe and around the world).

128.   However, Plaintiff is also aware that the general opinion in the rest of the world is that Barack Hussein Obama has, in essence, slipped through the guardrails to become President.  The United States and her military, commanded by a man who has himself expressed pacifist and anti-military opinions, are the targets of derision and ridicule abroad.

129.   The grounds for grant of a Preliminary Injunction are well known: (a) likelihood of success on the merits, (b) balance of hardships, (c) irreparable injury to Plaintiff, and (d) public policy favors the issuance of injunctive relief.

130.   Plaintiff submits that, as to the likelihood of success on the merits---since this is a question of first impression, Plaintiff should be awarded the temporary

injunction regardless of the lack of precedent, (a) because of the critical nature of any serious question concerning the constitutional legitimacy of the President as Commander-in-Chief, (b) because of the critical federal interest in this question, especially from the standpoint of military presence abroad, in potentially if nor certainly hostile territory, (c) because of the mounting evidence of fraud on the part of the *de facto* President shown in Exhibits E, F, & G, and (d) because of the well-known but as yet undecided question of Barack Hussein Obama's legitimacy, qualified immunity does not protect any officer from a potentially erroneous decision in this matter.

131.    Plaintiff's likelihood of success on the merits---at least on the question that standards need to be established for constitutional legitimacy of the President, and that all commissioned military officers who have taken the oath provided by 5 U.S.C. §3331 *(supra) must have the right (especially in time of domestic peace and no known imminent invasion or attack on the country) to demand proof of legitimate chain of command.

132.    As to balance of hardships, the Plaintiff Captain Connie Rhodes, M.D. F.S. is a Patriotic American who voluntarily joined the army and placed her life on the line for the defense of freedom and the rule of law ("truth, justice, and the American way of life") as her career.

133.    Plaintiff Captain Connie Rhodes, M.D. F.S. found reason to decide and conclude against the legitimacy of the Commander-in-Chief, and the only appropriate answer to her refusal to deploy is to satisfy her own demands proof, and those of all other commissioned officers similarly situated since January 21, 2009, at the very minimum, of Barack Hussein Obama's constitutional legitimacy

and eligibility.

134.   Plaintiff's negative conviction and conclusion against the President, and her moral objection and indeed her unwillingness to serving him as an officer engaged in armed conflict abroad, is made more acute by the evidence of multiple addresses and social security numbers attached as Exhibit B, and (as yet incompletely authenticated) Kenyan Birth Certificate attached as Exhibit C but these matters are of  of great concern when paired with the January 21, 2009, Executive Orders attached as Exhibit G.

135.   However, Barack Hussein Obama, in order to prove his constitutional eligibility to serve as President, basically needs only produce such historical documents for the Plaintiff's inspection and authentication as are necessary to prove his "natural born" status.

136.   First the President must invalidate the overwhelming evidence that he was born abroad, articulated within the past week by California 33rd District Congressional Representative Diane Watson, particularly in Kenya.

137.   The President could produce the long anticipated and often requested "long-form" birth certificate from the State of Hawaii.

138.   However, the President must confirm whether he (as Barry Soetero or Barack Hussein Obama) was in fact born to parents who were **both citizens of the United States** in Honolulu, Hawaii, in or about 1961, and the President has long admitted and in fact, adopted as a key aspect of his political persona and identity that, in fact, his Father was of British (Colonial) or specifically Kenyan (Colonial or Independent) nationality, so that this President could never be a "natural born" citizen as that term has been understood throughout American

history and throughout international law.

139.    The test for natural born citizenship is a subject which this Court should clarify by declaratory judgment, and for such a clarification by declaratory judgment Plaintiff now prays, on behalf of herself and all other commissioned officers similarly situated, as a precondition to deployment in Afghanistan or any other active theatre of foreign military conflict.

140.    It is no answer to show the short-form birth certificate which has no seals and is signed by no one and is produced, as most birth-certificates are, by computerized reproduction.

141.    In light of Exhibit B, the affidavit of Neal Sankey, as well as Exhibit C, the unauthenticated Birth Certificate, Plaintiff submits herein that only final proof of Barack Obama's natural born citizenship by authentic, and authenticated, legal documents will prevent this Plaintiff from holding her firm conviction and conclusion that, as matter of law, in violation of her officer's oath, if she obeys her order to deploy she is and will be serving a false master, a false commander-in-chief, a false President, and thereby violating the international laws of nations by acting without legitimate authority.

142.    As a practical matter, the mere execution by the President of a comprehensive medical release under HIPAA (Privacy Rule of the Health Insurance Portability and Accountability Act of 1996) would permit the Plaintiffs to obtain most of the information which they are seeking; separate releases of the President of his personal passport files and history maintained by the United States Department of State and Social Security Commission would resolve all other questions raised by Exhibits E, F, G.

143.   Accordingly, the President needs to sign three releases concerning his personal and private history prior to becoming President, and the President cannot possibly suffer any unjustified inconvenience or harm from the execution of these documents, especially since Presidents have historically disclosed their full medical histories as a routine matter of public interest and concern.

144.   The balance of equities, the balance of hardships, clearly favor the entry of this Temporary Restraining Order and/or Preliminary Injunction pursuant to 42 U.S.C. §s1983, 1988(a).

145.   From Plaintiff Captain Connie Rhodes, M.D. F.S.'s standpoint, if the history of World War II and the Nuremberg Trials teaches us anything, it is that no military officer should ever rely on "apparent" authority or "facial" legitimacy of orders.

146.   Every officer has an independent duty to use his or her conscience and evaluate the legitimacy of the chain of command under which s/he operates, and when reasonable doubts arise, the Courts should afford remedy and protection.

147.   If Plaintiff were to proceed to wage war on the people of Iraq, the orders of an illegitimate President, Plaintiff runs the risk of acting as a ***de jure*** war criminal---not entitled to the protections of international law at all.

148.   All that is asked of the President is that he humbly acknowledge and produce his true and complete "original" birth certificate, and that he then confirm and acknowledge that, no matter where he was born, he cannot be President because one of his parents (Obama's natural father) was not a US citizen at the time of his son's birth.

149.   So long as this complete document in form and substance clearly

establishes and proves according to the two-prong test set forth above that Barack Hussein Obama has lawful status as a "natural born" citizen, within the true and original meaning of that term as established by the precedents of the American Courts, the President and the Presidency will not only have suffered no harm, but will have reaffirmed the faith of the people in the rule of law as dominating all men, including the President of the United States.

150.    As discussed above, the balance of the equities and hardships shows that, so long as the President is and has always been honest about his place of birth and yet simultaneously dishonest about his parentage, he will suffer no harm at all---and if the President has not always been honest and truthful about his place of birth, or if he has been honest and truthful about his parenthood and origins, then he will suffer no unjustified harm or injury as a result of the necessary disclosures.

151.    However, the potential harm to the Plaintiff if relief is denied is that she will be required to serve heavily burdened by her firmly held convictions and unwilling conscience THAT SHE IS CONSTANTLY ACTING IN VIOLATION OF HER OATH AS AN OFFICER OF THE UNITED STATES, which in itself is and ought to be repugnant to a free society.  Involuntary servitude was abolished in 1865, and this Court should not underestimate the crisis of confidence which an order of unquestioning obedience will have, nationwide, on the legitimacy and "full faith" which can be accorded to its officers and their actions.

152.    Any officer who doubts her commander-in-chief cannot be a good soldier, unless she is instructed that "following orders" is the highest virtue of all, and surely the Nuremberg Trials, and the Trial of Adolf Eichman in Jerusalem, have

proven this position false and dangerous to civilization and the moral and ethical administration of government.  This harm, this injury to conscience, is not speculative, it is not remote, it is immediate and without any legal remedy of damages or later honor bestowed as a result of service.

153.    Perhaps slightly more remote and speculative, but possible, plausible, and by no means without precedent in the past century is the possibility that if THIS Plaintiff is not allowed access to the truth, someone else may yet expose that the current **de facto** President serves in mockery and defiance of the Constitution, and that all his military adventures abroad will eventually be classified as private, slave armies engaged in private, piratical warfare unsanctioned by International Law and subject this Plaintiff to prosecution as a war criminal.

154.    As far as public policy goes, allusion has already been made to the crisis of public confidence—according to AOL poll 85%of Americans believe that Obama was not vetted, needs to be vetted and his vital records need to be produced---this Court would be doing the public interest a great service by protecting this Plaintiff's right to conscientiously object based on her  own reasonable and well-founded convictions (and the overwhelming evidence) concerning the chain of command originating from a questionable commander-in-chief.

155.    Furthermore, judicial resolutions of festering doubts and lack of confidence can diffuse social tension and re-establish confidence in the rule of law more generally.

156.    Plaintiff points out that there was another time in United States history when officers of the military were forced to make a choice whether to follow the central government or their consciences.  That time in United States history was

in 1861 when some of the finest officers of the United States Army felt that they and their constitution had been betrayed by the central government, and that is how Mexican War heroes Jefferson Davis and Robert E. Lee, among so many others, became the leaders of the Confederate States of America.

157.   There were no lawsuits filed at that time---5 U.S.C. §702 and 42 U.S.C. §§1983-1988 had not yet been enacted.   But the public interest is served by permitting Army officers to seek judicial protection and assistance when they question the legitimacy and authority of the commander-in-chief with regard to moral and constitutional issues.

158.   There are no "competing" governments now---no seceding states, however over 36 states have either passed or considered the bills of Sovereignty lately, which can be a step towards secession and a sign of vast dissatisfaction with the Federal government and the President.

159.   In historical hindsight it is easy to say the Jefferson Davis and Robert E. Lee hurt their own states of Mississippi and Virginia by supporting secession.

**160.**   Plaintiff submits that judicial resolution of festering sores such as occur when people feel they cannot trust their leaders to follow the law, to live by the law, and to respect the concerns of all the people, especially when it will cost their leaders almost nothing to restore or bolster confidence, is a major public policy reason why this Application for Preliminary Injunction should be granted.

## <u>CONCLUSION</u>

Plaintiff Captain Connie Rhodes, M.D. F.S. submits, and hopes, that the Court will recognize that her present Complaint for Damages, Declaratory Judgment, and Rule 65 Application for TRO and Preliminary Injunction,

however focused on her negative convictions about the qualifications of the Commander-in-Chief, is about more than just Obama. **The legal theories in this case, the requested relief, all revolve around an officer's duty to uphold the Constitution, his duty to question the lawful nature and status of orders according to his oath as an officer--and the role of the armed forces as a critical element of the balance of power in a constitutional government.**

In the post-Nuremberg era, the era of International Law and the United Nations, the army cannot merely be subservient to the President, a mere tool or blindly subservient instrument. The United States Army, acting by and through its officers, is one of the most powerful forces IN THE WORLD, and for an Army NOT to have an independent conscience and capacity to question its role and position would be a very dangerous thing---which the founding fathers foresaw (and therefore discouraged standing armies). Since we now have a standing army, we need to give the officers constitutional status and empower them to use their moral consciences wisely, a duty and power their oaths suggest they already have, but the exercise of which role has never previously been contoured judicially.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court will enter a Preliminary Injunction upon full-hearing, waiving all bonds or other financial requirements. Specifically, Plaintiff prays that this Court

(1) will declare Title 10 of the United States Code, and 10 U.S.C. §938 in particular Unconstitutional on its face, for failure to provide temporary relief or

to allow or provide a ready mechanism or procedural means for the evaluation of the lawful or constitutional status of orders or of any other means by which officers can confirm or assure compliance with their oath to uphold the constitution of the United States and defend against all enemies foreign and domestic, and that this Court will further suspend Plaintiff's foreign deployment, and suspend or recall all other foreign deployments of commissioned officers similarly situated since January 21, 2009, until such time as the executive order of January 21, 2009, is repealed, cancelled, rescinded, or judicially voided, and until procedures and mechanisms are put in place by which officers can effectively and immediately verify or disown the lawful status and constitutional validity of orders received, together with preliminary relief from obligation to comply with all reasonably challenged orders except under circumstances of direct invasion of or visible threat to the security of the domestic borders or populations of the United States or their territories generally.

(2) recognize and respect Plaintiff Captain Connie Rhodes' status, and the status of all persons similarly situated in the United States Army and Armed Forces Generally (whether certified as a class pursuant to Rule 23 or not), as conscientious objectors based on legitimate doubts concerning the constitutional qualifications and eligibility of the ***de facto*** President and Commander-in-Chief, Barack Hussein Obama,

(3) enjoin Defendants Robert M. Gates, Colonel Thomas D. MacDonald, the Deputy Garrison Commander George Steuberat Fort Benning, or anyone in the Department of Defense or executive branch of the United States government generally, from issuing any order to Plaintiff or any other officers persons

similarly situated to Afghanistan or anywhere on active duty at all until

(4) such time as the constitutional qualifications and eligibility of Barack Hussein Obama to serve as President and Commander and Chief have been established by clear and convincing evidence (which standard of proof befits a constitutional requirement, especially in light of the confusing and conflicting circumstantial evidence set forth in Exhibits B and C).

Further, Plaintiff Prays that this Court will declare and adjudge

(5) that all commissioned officers have a duty, pursuant to their oath under 5 U.S.C. §3331 as well as under the Uniform Code of Military Justice, to inquire as to the lawfulness or legality of all orders received, and that the army must either

(6) that this Court fashion, as a matter of positive preliminary injunction and final permanent injunction, order the Department of Defense (pursuant to the powers of the Court under 18 U.S.C. §2201-2202 NS 42 U.S.C. §§1983 and 1988(a), among other sources) to fashion, implement, provide, and sustain procedures affording all officers with an administrative remedy wherein they may challenge ALL defects in orders, whether arising from considerations of statutory civilian or military law, the customs of war and military usage, the Constitution of the United States, or international law as established by treaties to which the United States is bound as a ratifying party.

Still Further, Plaintiff Prays that this Court will declare and adjudge

(7)    that no officer should ever be subject to formal discipline or informal retaliation, including discrimination in civilian employment, for lawful exercise of his or her First Amendment Right to Petition for Redress of

Grievances, for demanding her (or his) Fifth Amendment Due Process of Law under Title 10 or Army Regulations implementing the same and her (or his) Ninth Amendment Right otherwise to conscientiously object in a peaceful manner and ethically protest moral, legal, ethical, or constitutional defects in orders or army policy according to the dictates of ***her*** conscience;

(8)     that Plaintiff Captain Connie Rhodes, M.D. F.S. should be protected by injunction and declaratory relief from being wrongfully subjected, by institutional action, classification, or by the behavior or on the initiative of anyone in the United States Executive Branch or Department of Defense or United States Army, to retaliation as a result of her exercise of her First, Fifth and Ninth Amendment rights and that

(9)     that Plaintiff have all her attorneys fees and reasonable costs of suit, and all such other and further relief as this Court may allow, pursuant to 28 U.S.C. §2201-2201 and 42 U.S.C. §§1983, 1988(a).

Respectfully submitted,

WEDNESDAY September 2, 2009

By:_____
Orly Taitz, DDS, Esq.
California Bar ID No. 223433
FOR THE PLAINTIFF
**Captain Connie Rhodes, M.D. F.S.**
29839 S. Margarita Pkwy
Rancho Santa Margarita Ca 92688
Ph. W.: 949-586-8110 Cell: 949-683-5411
Fax 949-766-7603
E-MAIL: dr_taitz@yahoo.com

CERTIFICATE OF SERVICE

The above-and-foregoing Complaint for Declaratory and Injunctive Relief: that 10 U.S.C. §938 and Army Regulation 27_10 be declared unconstitutional both on their faces and as applied, was served by facsimile and/or hand delivery on Wednesday, September 2, 2009, on the following parties:

Colonel Thomas D. MacDonald
Garrison Commander, Fort Benning, Georgia
Hugh Randolph Aderhold , Jr.
PO Box 1702
Macon , GA 31202-1702
478-621-2728
Email: Randy.Aderhold@usdoj.gov

Dr. Robert M. Gates, Secretary of Defense
President Barack Hussein Obama, by
Maxwell Wood, United States Attorney for the Middle District of Georgia, at
Columbus Division    1246 First Avenue    SunTrust Building, 3rd Floor
    Columbus, Georgia 31901    Tel: (706) 649-7700.


_____
        Attorney Orly Taitz, Esquire, for the Plaintiff
            Captain Connie Rhodes, M.D. F.S.

# EXHIBIT A:
# Deployment Order Received by
# U.S. Army Major Captain Connie Rhodes, M.D. F.S.

# Exhibit B:
# Affidavit of Neal Sankey
# And list of
Addresses and
Social Security Numbers
Utilized by Barack H. Obama
And Documents
Attached thereto
Concerning B.H. Obama's
Abuse of Social Security
Numbers

# Exhibit C: Photocopy of Alleged Kenya Birth Certificate issued in 1964 concerning B.H. Obama

# Exhibit D:
# "Army Values" Card

# Exhibit E:

# Exhibit F:

# Exhibit G:
# Executive Order Concerning Presidential Records

**http://edocket.access.gpo.gov/2009/pdf/E9-1712.pdf**